**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| SHANNON LOUISE SANDS, )<br>      Plaintiff, )<br>            )<br>   v.           )<br>            )<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the )<br>Social Security Administration, )<br>      Defendant. ) | CAUSE NO.: 1:12-CV-206-JEM |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Shannon Louise Sands on June 21, 2012, and Plaintiff's Brief [DE 16], filed by Plaintiff on November 19, 2012. Plaintiff requests that the decision of the Administrative Law Judge be reversed and that she be awarded benefits. On February 25, 2013, the Commissioner filed a response, and on March 11, 2013, Plaintiff filed a reply. For the following reasons, the Court denies Plaintiff's request for reversal.

**PROCEDURAL BACKGROUND**

On August 4, 2009, Plaintiff filed an application for disability insurance benefits ("DIB") with the U.S. Social Security Administration ("SSA") alleging that she became disabled on September 5, 2002. Plaintiff's application was denied initially and upon reconsideration. On November 2, 2010, Administrative Law Judge ("ALJ") Warnecke Miller held a hearing at which Plaintiff, with counsel, her husband, and a vocational expert ("VE") testified. On December 6, 2010, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.     The claimant last met the insured status requirements of the Social Security Act on December 31, 2004.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of September 5, 2002, through her date last insured of December 31, 2004 (20 CFR 404.1571 *et seq*).

3. Through the date last insured, the claimant had the following severe impairments: obesity, degenerative disc disease, disc bulges involving the T12-L1 and L4-5 levels, and moderate osteoarthritis at L2 through S1 with mild foraminal narrowing at L5-S1. (20 CFR 404.1520©).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. Through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), with the following limitations: she must be able to alternate between sitting and standing, but the positional change will not render the claimant off task; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally balance; never stoop, kneel, crouch or crawl; avoid concentrated exposure to extreme humidity and wetness; avoid exposure to operational control of moving machinery, unprotected heights, and/or slippery/uneven surfaces; cannot understand, remember, or carry out detailed instructions; pace is limited to goal-oriented standards rather than a production pace rate (no fast pace); and can tolerate interacting with the public, but cannot tolerate responsibility for addressing complaints or other concerns.

6. Through the date last insured, the claimant was unable to perform any past relevant work. (20 CFR 404.1565).

7. The claimant was born on September 28, 1960, and was 44 years old, which is defined as a younger individual age 18-44, on the date last insured. (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English. (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, work experience and residual functional capacity, there were jobs that existed in the national economy that the claimant could have performed. (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from September 5, 2002, the alleged onset date, through December 31, 2004, the date last insured. (20 CFR 404.1520(g)).

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**FACTS**

**A.  Background**

Plaintiff was 42 years old on the date of her alleged disability onset, 44 on the date she was last insured. She had past work experience as a production assembler and general inspector.

**B.  Medical Evidence**

On July 23, 2002, at her first visit with him, Plaintiff complained to general practitioner, Dr. Antonio Garrido, of chronic low back pain. He concluded that her motor, sensory, and deep tendon reflexes were normal, and ordered an MRI. On July 30, 2002, radiologist Dr. Charles Tsai performed an MRI that revealed degenerative disk disease, mild disk bulges at the T12-L1 and L3-4 levels, and at L4-5 a left sided disk bulge and a moderately sized disk protrusion that contacted the ventral sac and the right L5 nerve roots.

In August 2002, Plaintiff began physical therapy. On September 4, 2002, her therapist noted that Plaintiff said she was still suffering leg cramps and nighttime flares of pain but that the posture and prone positioning controlled her pain well. On September 19, 2002, the physical therapist wrote

that Plaintiff had improved from 63% to 50% back disability, reported pain at 2-3 out of 10, and reported that she was controlling pain well with prone lying. She was able to walk on a treadmill with slight low back pain and no increase in leg pain, although her trunk flexion remained limited.

On September 5, 2002, patient visited spine specialist Dr. Bryan Kaplansky for the first time. He noted that Plaintiff had normal gait, balance, and coordination, but restricted trunk motion that caused mild low back pain, and discomfort in gluteal and thigh area on the left with end range forward flexion. His impression was of left lumbosacral radiculopathy with both features of L5 and S1, L4-5 disc protrusion, and chronic low back pain. Plaintiff agreed to continue with physical therapy and take medications but was not interested in surgery.

On December 5, 2002, Plaintiff's general practitioner reported that Plaintiff was doing very well and that the two lumbar epidural injections helped, leading to about 70% improvement in her low back pain and minor and intermittent limb symptoms. He reported that she was fully functional and only occasionally took pain medication.

On March 6, 2003, Dr. Kaplansky reported that Plaintiff was considerably improved since the epidural injection, with essentially resolved limb symptoms and intermittent lower pack pain. Her gait was normal, and her trunk motion caused mild low back pain. She continued to see him intermittently, and on July 17, 2003, told him that she had been doing very well until she stepped in a hole. The injury caused a mild exacerbation of her low back pain that Dr. Kaplansky reported appeared to be muscular in nature. He prescribed a short course of Bextra and Flexeril. By September 25, 2003, Dr. Kaplansky noted that her gluteal area discomfort had lasted for two months despite treatment. He wrote a note excusing Plaintiff from jury duty and recommended an MRI of her pelvis because of the ongoing sacroiliac area pain, but noted that her previous disco genic and

4

radicular symptoms seemed to have resolved. Plaintiff did not see Dr. Kaplansky again until June 3, 2004. At that visit, she reported that she felt much better when she lost weight. On physical examination, Plaintiff's trunk range of motion caused low black pain that was mild at end range for flexion and extension, diffuse tenderness posteriorly, and very mild low lumbar paraspinal and midline tenderness. Dr. Kaplansky prescribed Lidoderm patches, a pool therapy program, and a renewal of the orthotics for her shoes. At the next visit, on October 12, 2004, Plaintiff reported that the Lidoderm and orthotics helped dramatically and made her essentially pain free. At her last visit with Dr. Kaplansky until 2008, straight leg raising was considerably positive on the right with symptoms into her foot, with low back pain on the left, diffuse gluteal and low lumbar tenderness, and lumbrosacral junction area discomfort caused by range of motion. Plaintiff continued to refuse surgery, and Dr. Kaplansky recommended that she return to physical therapy and offered her injections. Plaintiff instead chose Lidoderm patches and agreed to obtain another MRI.

On November 23, 2004, an MRI was performed on Plaintiff that revealed degenerative disc disease that had not significantly changed from the 2002 MRI, osteoarthritis from L2 to S1 with mild left foraminal narrowing at L5-S1, and resolution of the prior disc extrusion at L5-S1 seen on the 2002 MRI.

On September 21, 2009, state agency examining physician Dr. A. Dobson concluded that Plaintiff could frequently lift up to 10 pounds, stand or walk and sit with normal breaks for six hours per eight hour workday, frequently stoop and crouch; occasionally climb stairs, balance, kneel, and crawl; and never climb ladders, ropes, or scaffolds. On December 21, 2009, Dr. F. Lavallo affirmed that assessment.

On October 25, 2010, Dr. Kaplansky wrote a letter to counsel for Plaintiff reporting that

between August 2002 and December 2004, Plaintiff had chronic, disabling low back pain for which she required periodic non-surgical care and ultimately underwent surgery.

C.     **Hearing Testimony**

At the Administrative Hearing, Plaintiff and her husband testified about her limitations and pain. Plaintiff reported that since September 2002, pain in her back, left leg, and foot had prevented her from walking extended distances, climbing stairs, or standing for long periods of time. She said that the pain caused depression that reduced her desire to interact with others and she was given Prozac, although she did not see a mental health therapist at any time from 2002 to 2004.

D.     **Vocational Expert Testimony**

At the Administrative Hearing, Amy Kutschbach testified as a neutral vocational expert. The ALJ asked the VE to consider a hypothetical individual with Plaintiff's age, education, and past work experience who could perform work that allowed her to alternate between sitting and standing, but the positional change would not render her off task; would be limited to lifting or carrying less than 10 pounds; could occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally balance; never stoop, kneel, crouch or crawl; would have to avoid concentrated exposure to extreme humidity and wetness; avoid exposure to operational control of moving machinery, unprotected heights, and/or slippery/uneven surfaces; would be unable understand, remember, or carry out detailed instructions; whose pace would be limited to goal-oriented standards rather than a production pace rate (no fast pace); and who could tolerate interacting with the public, but could not tolerate responsibility for addressing complaints or other concerns. The VE testified that the individual would be unable to perform Plaintiff's past work, but identified jobs in the regional economy that the individual could perform, including office helper, repack room worker,

and final assembler. In response to a follow-up question, the VE testified that someone with the above physical capacity could not work if she also could not interact with the public or coworkers.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings."

*White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant

numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920(a)(4)(I)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*,

55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

**A.     Weight to Treating Physician**

Plaintiff argues that the ALJ erred by failing to give sufficient weight to Plaintiff's treating physician. The Commissioner argues that the ALJ properly awarded significant weight to Dr. Kaplansky's opinion.

When a treating source's opinion is well-supported by objective medical findings and not inconsistent with other evidence it is entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2). Generally, a treating source's opinion is given more weight than a non-treating source's opinion. *Id.* In deciding how much weight to give a doctor's opinion, the factors an ALJ considers are: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(I)-(ii), (c)(3)-(6); *see also Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). "If the ALJ discounts the [treating] physician's opinion after considering these factors, [the Court] must allow that decision to stand so long as the ALJ 'minimally articulated' his reasons." *Elder,* 529 F.3d at 415 (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)); *see also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) ("An ALJ thus may discount a treating physician's medical opinion if it . . . 'is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates

his reasons for crediting or rejecting evidence of disability.'") (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)).

In 2010, in response to a request from counsel for Plaintiff, Dr. Kaplansky wrote that Plaintiff "has had chronic disabling low back pain and intermittent lumbrosacral radicular symptoms prior to December 31, 2004. In [his] opinion, her disability dates back to at least August of 2002." AR 507. Plaintiff argues that the ALJ should have relied on this analysis to conclude that Plaintiff was completely disabled. The Commissioner argues that the ALJ reasonably rejected Dr. Kaplansky's comment because the ALJ, not a treating physician, is responsible for making the ultimate disability determination, and the physician's records describe Plaintiff's complaints of mild, treatable pain that did not significantly limit her functioning.

The ALJ is "responsible for making the determination or decision about whether [a claimant] meets the statutory definition of disability" and, to make that determination, she must "review all of the medical findings and other evidence that support a medical source's statement that [the claimant] [is] disabled. A statement by a medical source that [a claimant] [is] 'disabled' or 'unable to work' does not mean that [the ALJ] will determine that [she is] disabled." 20 C.F.R. § 404.1527(d)(1); *see also Johansen v. Barnhart*, 314 F.3d 283, 288 (7th Cir. 2002) ("[The treating physician]'s general opinion that [the plaintiff] was 'unable to work gainful employment . . . ' is not conclusive on the ultimate issue of disability, which is reserved to the Commissioner."). In this case, the ALJ gave controlling weight to the treating physician's notes, concluding that Plaintiff had greater limitations than those described by the state agency physicians. Although she did not credit Dr. Kaplansky's later opinion that Plaintiff had been disabled during the time period in question, the ALJ's determinations and conclusions were consistent with the treating physician's records. The

11

legal determination of disability is one that is left up to the Commissioner, not a treating physician, and the Court concludes that the ALJ articulated her reasons for according great weight to the treating physician but not ultimately concluding that Plaintiff was disabled under the Social Security Act.

**B.     Credibility**

Plaintiff also argues that the ALJ improperly discounted the credibility of Plaintiff and her husband.  The Commissioner argues that the ALJ reasonably discredited Plaintiff's and her husband's allegations regarding the severity of her pain.

In making a disability determination, an ALJ will consider a claimant's statement about his or her symptoms, including pain, and how they affect the claimant's daily life and ability to work. *See* 20 C.F.R. § 404.1529(a).  However, subjective allegations of disabling symptoms alone cannot support a finding of disability.  *See id*.  The Regulations establish a two-part test for determining whether complaints of pain contribute to a finding of disability: (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the symptoms alleged; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms.  20 C.F.R. § 404.1529(a).

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)     The individual's daily activities;

(2)     Location, duration, frequency, and intensity of pain or other symptoms;

(3)     Precipitating and aggravating factors;

12

(4) Type, dosage, effectiveness, and side effects of any medication;

(5) Treatment, other than medication, for relief of pain or other symptoms;

(6) Other measures taken to relieve pain or other symptoms;

(7) Other factors concerning functional limitations due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96- requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence." SSR 96-7p, 1996 WL 374186, at *1 (Jul. 2, 1996).

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on her ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska*, 454 F.3d at 738.

Plaintiff argues that the testimony of Plaintiff and her husband was consistent with the opinion of Dr. Kaplansky that Plaintiff was disabled and therefore should have been credited. Plaintiff argues that the ALJ erred in failing to credit the testimony of Plaintiff regarding the limited activities she was able to manage and gave too much weight to the residual functional capacity assessment report of the state agency physicians. The Commissioner argues that the ALJ reasonably discredited the allegations of Plaintiff and her husband regarding the severity of Plaintiff's pain

13

because their allegations were inconsistent with the medical reports in the record.

In this case, the ALJ considered the testimony of Plaintiff and her husband and compared it to the medical records and test results. The ALJ considered the residual functional capacity assessment report completed by non-examining agency physicians and ultimately gave it only moderate weight. She found, based in significant part on the testimony of Plaintiff and her husband, that Plaintiff was more limited than reflected in the state agency physicians' assessments, particularly as to her mental health and social restrictions. The ALJ thoroughly described how she weighed the physical and mental health evidence, including the testimony about Plaintiff's pain, and its consistency with the rest of the evidence. The Court can easily trace the path of the ALJ's reasoning, and cannot conclude that it is patently wrong.

**C.     Vocational Expert Testimony**

Plaintiff also argues that the ALJ erred by failing to consider the full testimony of the VE in determining Plaintiff's ability to perform work.

When an ALJ relies on testimony from a VE to make a disability determination, "the hypothetical question [s]he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (citing *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004); *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003); *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002)). If the VE is unaware of all of the Plaintiff's limitations, she may refer to jobs the Plaintiff cannot perform. *Kasarsky*, 335 F.3d at 543.

In this case, the ALJ gave a series of increasingly restrictive hypotheticals. In response to the last, most restrictive question, the VE testified that a person with Plaintiff's other restrictions

who was also unable to work with the public or co-workers would not be able to obtain full-time competitive work. Plaintiff argues that the ALJ should have credited the VE's response to this hypothetical. The Commissioner argues that the ALJ's RFC, which is not challenged by Plaintiff, concluded that Plaintiff was able to interact with the public as long as she did not have to respond to complaints or concerns, making the VE's response to a more restrictive hypothetical irrelevant. The hypothetical relied on by the ALJ included all of the restrictions in the RFC, and the VE testified that there was work available in the regional economy to someone with those restrictions. There is no apparent error in the ALJ's reasoning or reliance on this expert testimony.

## CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** the relief requested in Plaintiff's Brief [DE 16] and **AFFIRMS** the Commissioner of Social Security's final decision.

SO ORDERED this 23rd day of September, 2013.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT


cc: All counsel of record